BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
DAVID G. ROBINS, IDAHO STATE BAR NO. 8494
FRANCIS J. ZEBARI, IDAHO STATE BAR NO. 8950
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:26-cr-00047-BLW-1 |
| Plaintiff, | |
| vs. | **MEMORANDUM IN SUPPORT OF DETENTION** |
| SARAH ELIZABETH GEORGE, | |
| Defendant. | |

The Defendant should be detained. No conditions can reasonably assure the safety of the community against the Defendant who attacked a federal building in an act of domestic terrorism. Such a maladjusted person is a certain flight risk given her thirty-three-year sentencing Guideline and seven-year mandatory minimum. The Court cannot expect someone who attacked a federal law enforcement building in violent repudiation of federal authority to suddenly respect that same federal authority on release. She should be detained.

## I.    PROCEDURAL BACKGROUND

On February 23, 2026, this Court authorized a complaint and arrest warrant for the Defendant for the offenses of 18 U.S.C. § 844(f)(1) (malicious destruction of government property by fire) and 18 U.S.C. § 844(i) (malicious destruction of property used or affecting

MEMORANDUM IN SUPPORT OF DETENTION – 1

interstate or foreign commerce). Law enforcement arrested the Defendant on the complaint on the same date.

On February 24, 2026, a grand jury returned a criminal indictment charging the Defendant with 18 U.S.C. § 844(f)(2) (malicious destruction of government property by fire creating a substantial risk of injury to any person) and 18 U.S.C. § 844(i) (malicious destruction of property used or affecting interstate or foreign commerce).

The Defendant had her initial appearance before this Court on February 24, 2026. (ECF No. 9). The Government moved for detention. (ECF No. 6). The Defendant resisted this motion and requested a hearing. The Government submits this memorandum in support of detention.

## II.    **APPLICABLE LAW**

In this case, there is a rebuttable presumption that no conditions of release will reasonably ensure the safety of the community in this case. 18 U.S.C. § 3142(e).[1] Assuming the Defendant rebuts the presumption, the Court must determine if the Defendant poses a risk of flight by a preponderance of the evidence or a risk of safety to any other person and the community by clear and convincing evidence. 18 U.S.C. 3142(e)(1). In making this determination, the Court should consider all the factors identified in 18 U.S.C. § 3142(g). These include the following:

1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591 [sex trafficking], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

2) the weight of the evidence against the person;

3) the history and characteristics of the person, including—

---

[1] This is a presumption case as the Defendant is charged with both a crime of violence and qualifying criminal charges under 18 U.S.C. §§ 844(f)(2) & 844(i). 18 U.S.C. § 3142(e).

MEMORANDUM IN SUPPORT OF DETENTION – 2

     a.   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

     b.   whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release…

18 U.S.C. § 3142(g)(1)–(4).

## III.   <u>ANALYSIS</u>

A.  <u>Summary</u>

The Defendant presents a massive risk of violence. The Defendant, in a premeditated act of domestic terrorism, stole an ambulance, smashed it into a building housing government workers, and attempted to burn it down. Her motivation was political disagreement. Given this act, she is too violent, unhinged, and psychologically maladjusted to be in community, regardless of any release plan or courtroom promises.

The Defendant presents a massive risk of flight. Her crimes were predicted on a rejection of Government authority. To her myopic skewed perception, her crimes were morally justified. It is an unbelievable proposition that she, in an 180-degree change of ideology, will now honor and respect the same authority on release. Flight is also likely given her extensive criminal exposure. Not only do her crimes carry substantial mandatory minimum sentences (five and seven years), but her Guidelines with the terrorism enhancement suggest a top end sentence of 33 years in prison. In summary, if she is willing to burn a building, she is willing to flee as a matter of

common sense. A release plan and promises cannot reliably constrain the flight ambition of the Defendant given the facts. The risk of violence and flight are too great. She should be detained.

B.  Application of 18 U.S.C. § 3142(g)

    a.  The nature and circumstances of the offense charged supports detention.

The first thing to consider is the nature and circumstances of this offense. 18 U.S.C. § 3142(g)(1). This is not just first in analysis, but first in importance here. The Defendant's crimes were violent, and not in a demure, theoretical, or hyperbolic way. But in a way where her crimes presented an unusual 1) quantity of carnage, 2) means of attack, and 3) risk to innocents. Those factors demand detention, as they underscore her risk of harm to the community. This conclusion is further compelled by the reasons she committed her crimes—domestic terrorism.

    i.  *The Defendant's crimes were violent, resourceful, and imposed substantial community risks.*

The types of harm inflicted highlight the risk of harm she poses if released. The types of harm resulting from her criminal act are as follows:

- Community harm: The Defendant stole from a hospital and damaged an ambulance. That is not a benign act. The vehicle is a tool of necessary community service, and she took it from a hospital.

- Property harm: The Defendant significantly damaged a prominent commercial building. Currently, it is estimated that the building will remain closed for the next three months awaiting full repairs.

- Economic harm: The costs of repairs to the building and ambulance have yet to be tabulated, but it will certainly be expensive. As will the economic opportunity costs of having a commercial facility be put out of commission.

- Resource harm: The Defendant's actions caused an expensive and exhaustive police response. This crime is unique, in that the efforts undertaken to identify, trace, and investigate the Defendant drained significant societal resources.

- Law enforcement harm: The Defendant's actions have interrupted the use of the building by ICE. While she did not burn the building to the ground, her crime has interrupted federal law enforcement operations.

MEMORANDUM IN SUPPORT OF DETENTION – 4

The sum of these factors supports the finding that the Defendant poses a clear and convincing danger to the community.

As to the means of attack, she staged gas cans, stole an ambulance, concealed her identity, smashed into a building, and attempted to destroy it by fire. She plotted and used common items as weapons. This reveals a significant community risk. Using an ambulance as a battering ram and gasoline to destroy has a sad symmetry with other terrorist attacks. And she did it all for less than $100 dollars. These acts reveal a community risk. Moreover, on this point, black letter law also supports detention. Crimes involving an "explosive, or destructive device" are centered for consideration. 18 U.S.C. § 3142(g)(1). Circumstance depending, the ambulance and gasoline may not meet the definition of an explosive or destructive device depending on vaporous concentrations. 18 U.S.C. § 921(a)(4)(A). However, the way she used the items rendered them a functional equivalent. The law supports detention here, as her ability to play havoc with common items shows danger.

As to risks of harm, the Defendant's crimes inflicted great risk. After all, she stole an ambulance that may have been needed for critical service, inflicting risks by compromising medical care. She smashed into a building and attempted to start a fire in a place that she did not know was empty, inflicting risks on any potential occupants working late or cleaning for the next day. Her actions were reckless and done with extreme disregard for human life.[2] She inflicted risks on first responders, as they had to deal with the vaporous remnants of her failed attack.[3]

---

[2] This mental state is sufficient for second degree murder charge if loss of life would have occurred. 18 U.S.C. § 1111; Ninth Circuit Committee on Model Criminal Jury Instructions, Manual of Model Criminal Jury Instruction for the District Courts of the Ninth Circuit, Instruction No. 16.2 (2022).

[3] The vapor pressure, flash point, and evaporation rate of gasoline makes it a dangerous means of attack and arson. The Defendant placed approximately seven gallons of gasoline on the floor of the Portico building and created a potential explosion risk that first responders had to contend with.

MEMORANDUM IN SUPPORT OF DETENTION – 5

The Defendant forced risks on innocent patients, first responders, police, and the public that underline the danger she is capable of if released.

        ii.   *The Defendant's crimes were domestic terrorism.*

The law defines domestic terrorism. In 18 U.S.C. § 2331(5), it states:

> the term "domestic terrorism" means activities that—
>     (A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State;
>     (B) appear to be intended—
>         (i) to intimidate or coerce a civilian population;
>         (ii) to influence the policy of a government by intimidation or coercion; or
>         (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and
>     (C) occur primarily within the territorial jurisdiction of the United States.

The Defendant's motivations provide the strongest reasons for incarceration.

To begin, the Government fully acknowledges and defends the right of the People to absolute protection in their beliefs. The Government fully acknowledges, supports, and protects First Amendment rights to free speech. Here, the Government is not seeking detention due to the Defendant's political beliefs or status in hermetic isolation. Rather, the Government is considering her statements insofar that they relate to her criminal acts. Political speech, when melded with political violence, becomes relevant in addressing criminal conduct. To the extent speech explains her motivation, predicts penalties, and informs of dangers related to flight and harm, they are properly considered by this Court and argued by the Government.

Accordingly, it is proper to recognize that this is a federal crime of terrorism in considering release. The code emphasizes this as an analytical point weighing in favor of detention. 18 U.S.C. § 3142(g)(1) ("the nature and circumstances of the offense charged, including whether the offense is … a Federal crime of terrorism" supports detention). The Defendant attacked an ICE building for political reasons. The Defendant's social media posts

and reposts provide a window into her mind that firmly establishes this fact.[4] On the day of her

attack, her most telling social media post was as follows:

- At 5:13 am, on the day she attacked, she reposted a video on social media and wrote "If it can be destroyed by the truth then it should be destroyed; the video she posted showed the white house burning and an actor emphatically yelling "Let it burn" with an in-video quote of "If we burn, you burn with us."



But it is not a single post that illustrates the Defendant's motivation, inclinations, and

psychology. Her social media is dense with agitation. Such posts are as follows:

- Four days after her attack, she reposted a video with an advocate stating that DHS/ICE defenders were lying and that the Government was providing false information to sow chaos as a political weapon.

- Three days after her attack, she reposted a video of woman who claimed to be "on the front lines of the resistance fighting ICE" who then alleged grievances against ICE.

- Two days after her attack, she posted a video of a man stating ICE agents are "unqualified, untrained, and emotionally unstable men living out their bully fantasies all while carrying a lethal weapon," that ICE has "28 billion for a basement dwelling incels to play dress up and shoot at us," and that "our federal government is acting in

---

[4] The video descriptions provided below were accessed on social media platforms using the identifiers from the videos contained in the Defendant's Facebook page.

tyranny abusing human rights of citizens and noncitizens alike executing people in the street and trampling over our Constitutional rights as Americans."

- The day after her attack, she reposted a video of a woman making a list of political statements, including abolishing ICE, abolishing the "prison industrial complex", while claiming the current government wants to give money to terrorists and thank them.

- At 3:56 pm on the day she attacked, she reposted a video of woman claiming that ICE is a profit engine of corruption while referring to ICE as "Dumpy's gestapo."

- At 3:47 pm on the day of the attack, she reposted a video on social media accusing leaders of the Department of Justice protecting pedophiles and violating the law.

- At 5:08 am on the day she attacked, she reposted a video of woman, in rhetorical form responding to in inquiry, saying that half the country is "truly evil and unable to feel empathy," that the President is a "malignant dictator" and an "orange virus," and that those who voted for the President either "are Michael Meyers or handed Michael Meyers the knife."

- On February 16, she reposted a video asking viewers not to believe "these fucking lies," referring to the claim that ICE rescued 3,364 children in Minnesota.

- On February 6, she reposted a video of a man saying that "it is too much to ask that a federal law enforcement agency not execute people in the street" and that ICE agents are "rock chewing cosplayers" who are "dangerous … incompetent" and that they "fill the streets so too shall the blood of the innocent." The video further depicts the man saying that "good people fight evil" and implying that an ICE supporter, or someone who does not protest ICE, would be "a real boot-licking piece of shit."

- On February 3, she reposted a video of a woman implying that ICE agents would be subject to murder prosecutions and lawsuits after a future election.

- Approximately 1 month before her attack, she directly wrote, "You're ok with them mur*3ing American in the streets? They have no jurisdiction over American citizens. Hold your head up, look me in the eyes, and tell me this is worth the price of gas F#(kh3@ds. You ignorant fools #newgestapo #fuckice #theonlygoodnaziisadeadnazi makenazisafraidagain nidieunimaitre"

MEMORANDUM IN SUPPORT OF DETENTION – 8

 georgewins83 You're ok with them mur*3ring Americans in the streets? They have no jurisdiction over American citizens. Hold your head up, look me in the eyes, and tell me this is worth the price of gas F#(kh3@ds. You ignorant fools
#newgestapo #fuckice 👆 ❄️ #theonlygoodnaziisadeadnazi makenazisafraidagain nidieunimaître

4w

- On December 18, 2025, the Defendant reposted a video of a woman stating, in regard to rebellious actions, "go fuck some shit up." The Defendant directly posted a statement saying "Remember that they have always tried to make gay people criminals; that's why we say, Be Gay, Do Crimes. My literal existence is resistance, and I refuse to be quiet about it."



Sarah George
December 18, 2025 · 🌐

Remember that they have always tried to make gay people criminals; that's why we say, Be Gay, Do Crimes. My literal existence is resistance, and I refuse to be quiet about it.

- On October 17, 2025, the Defendant reposted a video by a man pretending to be Jesus judging an ICE agent, while the man in the character of Jesus states that the ICE agents of kidnapping children in the middle of the night from their homes and condemns them to hell.

- The Defendant posted a statement on September 3, 2025, saying "ICE=Gestapo."



Sarah George
September 3, 2025 · 🌐

ICE = Gestapo

- The Defendant posted a video on August 28, 2025 saying "Gestapo Fuckheads. Imagine this though, imagine being so privileged that none of this shakes you out of your "moderate" sleep. ICE = Nazis."



Sarah George
August 28, 2025 · 🌐

Gestapo Fuckheads. Imagine this though, imagine being so privileged that none of this shakes you out of your "moderate" sleep. ICE = Nazis

The Defendant's social media is a veritable confessional as to her intent.

Her posts not only reveal her motivations, but her knowledge. The FBI located a repost by the Defendant, in which it shows affirmative knowledge that the building she attacked was an

MEMORANDUM IN SUPPORT OF DETENTION – 9

ICE facility. Her repost stated "Legality isn't morality… 'no ICE here' doesn't mean no harm" in reference to the building she attacked. Below is her repost:



Thus, between her actions and statements, there is ample evidence that she committed an act of domestic terrorism. By these actions, the nature of her crimes prove the Court should find her a risk of flight and a danger to the community.

Ultimately, the nature of her crimes are *res ipsa loquitur* on the issue of detention. After all, the Defendant committed arson against federal law enforcement to frustrate justice. There is no good reason to believe that she would not engage in subterfuge, violence, or flight to frustrate justice again. Especially when facing the weight of the evidence against her and the penalties that will apply.

      b.  <u>The weight of the evidence against the Defendant supports detention.</u>

      i. *There is a substantial amount of evidence.*

The weight of the evidence against the Defendant is strong. As is outlined in the complaint, there is a well-established timeframe accounting for the Defendant's actions in

MEMORANDUM IN SUPPORT OF DETENTION – 10

preparing and perpetrating the crime. There is video, photography, records, transactions, and a

firm timeline. It started with an unburnt Walmart bag containing lighter fluid left in the

ambulance. This led law enforcement to Walmart. In combing through records, law enforcement

discovered a suspicious transaction.



Law enforcement then recovered video of this transaction. They discovered the Defendant

purchasing gas cans, a beanie (worn during the crime), gloves (worn during the crime), and

lighter fluid (left in the bag in the ambulance).



Law enforcement recovered video of her truck that she used as transport at Walmart.

MEMORANDUM IN SUPPORT OF DETENTION – 11



Following her route of travel, law enforcement next found video of the Defendant filling the gas cans, where she used a rewards card in her name.



A short distance and while later, she is next seen on video driving her truck to a location near the Portico building.



A little bit later, she is next seen on video stealing the ambulance.

MEMORANDUM IN SUPPORT OF DETENTION – 12



A recorder inside the ambulance shows her driving.



Video from inside the Portico building shows her pouring gasoline.



A camera caught her, moments later, driving away from the attack after fleeing on foot.[5]

---

[5] A law enforcement officer, who was present at St. Luke's at the time the Defendant stole the ambulance, also witnessed these events.

MEMORANDUM IN SUPPORT OF DETENTION – 13



Subsequent investigation revealed more corroborating evidence. For example, law enforcement caught this image of her wallet while purchasing items:



Upon searching her residence, law enforcement found this same wallet, which appears to include the same arrangement of credit cards in the right side:



This matches her DMV photo:

MEMORANDUM IN SUPPORT OF DETENTION – 14



And it all matches a recording made by law enforcement at a previous traffic stop, where she was

stopped in the same vehicle and presented the same identification.



Law enforcement, upon searching her house, also found the clothing worn during the crime, to

include the hat, pants, boots, and jacket.



Law enforcement also found the gloves she purchased at Walmart.

MEMORANDUM IN SUPPORT OF DETENTION – 15



Law enforcement also found the toolbox seen in the back of her truck.



Law enforcement seized her truck, and it matches the unique details, make, and model as was observed on surveillance:



This all matches her statements on the day of the crime made on social media.

MEMORANDUM IN SUPPORT OF DETENTION – 16



Her intent is further corroborated by her other posts related to ICE.



She also reposted protest activity related to the building she attacked.



MEMORANDUM IN SUPPORT OF DETENTION – 17

The next day, after attacking the Portico building, law enforcement recovered video of the Defendant doing laundry in the common area of her apartment complex. In the video, the Defendant is seen washing the pants, and more suspiciously, the shoes she wore during the attack:



The most plausible explanation for washing a full boot is to remove gasoline inadvertently spilled on them.[6]

     The weight of the evidence is exceptionally strong.

          i.   *The Defendant is facing significant penalties.*

     The penalties at play in this case compel her flight. The crimes she is charged with call for application of USSG § 2K1.4(a)(1), which provides a base offense level of 24. Given the terrorism enhancement found at USSG § 3A1.4(a), she receives a 12-level increase in the offense level, resulting in an offense level of 36. Additionally, the terrorism enhancement requires that her criminal history category be VI, yielding an advisory imprisonment range of 324–405 months. Such a Guideline strongly supports detention. The Defendant could be seventy-six years old when released if she were given a Guideline sentence. That is an incredible incentive to flee.

        c.   <u>The history and characteristics of the Defendant support detention.</u>

---

[6] This also explains her failure to ignite the gasoline—fear of accidental immolation. This, combined with the prompt police response, nervous inability, or equipment failure are most plausible reasons why she failed to ignite the gasoline.

MEMORANDUM IN SUPPORT OF DETENTION – 18

The Defendant has no criminal history and limited community support. Surely, that supports release. But that does not tell the entire story of this Defendant, nor is that the end of the inquiry. The facts of this case reveal history and characteristics of the Defendant that support detention.

      i.   *The Defendant presents history and characteristics that support detention.*

The crimes, attending social media, and conduct all reveal the Defendant's characteristics. There are three reasons under this analytical prong to detain the Defendant.

First, the Defendant committed an act of domestic terrorism. A domestic terrorist is not a normally constituted person. A domestic terrorist often believes they are morally superior and justified in their carnage, and a courtroom promise means little to someone who perpetrates violence as a summum bonum or raison d'être. Most people can be quite angry with politics, but few would ever contemplate a violent attack on federal property. She chose political violence over dialogue to silence her perceived adversaries. These are characteristics of the Defendant, laid bare in the facts known to date, that weigh against release.

Second, the Defendant is enmeshed in an online culture and community of likeminded people. Emphatically, association alone is not guilt, and vibrant political discourse is necessary to a functioning democracy. First Amendment protected speech remains absolute. But we cannot ignore potential risks in some associations as they pertain to the Defendant. Some of these people may well support her criminal activities or reinforce the Defendant's beliefs that justified the attack. Her social media, as recounted above, reveals 469 "friends," and she is active across several social media platforms. This will reinforce her behavior, not constrain it. Consider, for example, the Defendant stated that Antifa is in her "blood":

MEMORANDUM IN SUPPORT OF DETENTION – 19



This provides damning insight into potential associations, as Antifa is a designated domestic terrorism group.[7] While the post above was made with a broad definition of Antifa that included veterans, her potential alignment with those who may cheer, condone, or support her crimes heightens risks of flight and violence. This cannot be reasonably addressed on release.

Third, the Defendant appears ideologically captured. Her social media, especially in the last year, is overwhelmingly political. The frequency and content all suggest that the ideology giving rise to her attack is held with a deep-seeded fervor. This is not something that can be momentarily addressed on release conditions. This is a characteristic that suggests violence or flight.

    d.  <u>The Defendant would pose a lethal danger if released.</u>

The nature and seriousness of the threat the Defendant poses is to her perceived political opponents and any innocent bystanders. Her violent political attack shows that she is capable of extremely risky, violent, and outlandish actions. This risk to civil society and community safety is too great to permit release.

**IV.    <u>FACTUAL PROFFER</u>**

    A.  <u>Incorporation by Reference</u>

The Government incorporates by reference the criminal complaint (ECF No. 1) and the proffer contained in the Motion for Detention. (ECF No. 6). The Government proffers the facts contained above in support of argument as facts.

//

---

[7] Order, 90 Fed. Reg. 46317 (Sept. 25, 2025).

MEMORANDUM IN SUPPORT OF DETENTION – 20

## V.    **CONCLUSION**

In sum, the Defendant is a domestic terrorist who committed an extremely dangerous and violent criminal act. A person capable of committing such an act cannot be trusted in the community to refrain from violence or abide by conditions of release given on the very authority she sought to destroy. The facts of this case require detention to protect the community and secure her appearance. The Defendant should be detained pursuant to 18 U.S.C. § 3142.

Respectfully submitted this 3rd day of March, 2026.

BART M. DAVIS
UNITED STATES ATTORNEY
By:

DAVE P+

_____
DAVID G. ROBINS
Assistant United States Attorney